UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AARON KATZ LAW LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ISSAC LAUFER ) | CIVIL ACTION NO.1:23-CV-11801-PBS |
| ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT ISSAC LAUFER'S MEMORANDUM IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Aaron Katz Law LLC ("AKL") filed this lawsuit asserting three claims and

seeking alleged unpaid legal fees arising out of AKL's legal representation of Defendant Issac

Laufer ("Mr. Laufer"). The terms of the engagement for legal representation, including the

financial terms that AKL claims were breached, are spelled out in the October 7, 2022

engagement letter between the parties (the "Engagement Letter"). Exhibit 1 (10/7/22

Engagement Letter).

AKL concedes that the Engagement Letter includes a written mandatory arbitration

provision mandating that all disputes "arising from or related to [the] engagement shall, if unable

to be resolved amicably, be resolved through binding arbitration." Exhibit 2 (Complaint) ¶7;

Exhibit 1 (Engagement Letter) ¶7. Yet AKL filed suit in this Court based on the conclusory

allegation that it "understands that Laufer … does not wish to enforce the arbitration provision."

Exhibit 2 (Complaint), ¶7. This allegation is false. Exhibit 3 (Laufer Sworn Declaration). Mr.

Laufer never waived the mandatory arbitration provision – and Mr. Laufer intends to exercise his

1

contractual right to enforce the mandatory arbitration provision through this motion to compel.

Id.

Because the parties agreed to arbitrate any disputes arising under the Engagement Letter, which clearly encompasses all of AKL's claims in the Complaint, the Court should dismiss this action and compel arbitration pursuant to the Federal Arbitration Act and consistent with the plain terms of the parties' agreement.

## RELEVANT BACKGROUND

On October 7, 2022, AKL provided the Engagement Letter to its client, Mr. Laufer. Exhibit 2 (Complaint), ¶29. The Engagement Letter "set[s] forth and memorialized in writing" the "material terms of [the] valid and enforceable agreement between AKL and Laufer." Exhibit 2 (Complaint), ¶ 74. One of these material terms was a mandatory arbitration provision, which provides:

> **7. Disputes** You agree that, ***to the maximum extent allowed by law*** and the Massachusetts SJC Rules of Professional Conduct, ***any disputes arising from or related to our engagement shall, if unable to be resolved amicably, be resolved through binding arbitration.*** Any such arbitration will occur either remotely or, if in person, in Suffolk or Middlesex County, Massachusetts. You further agree that the arbitrator shall be Eric D. Green of Resolutions, LLC or, if Mr. Green is unavailable due to death, health, retirement, or conflicts, another qualified AAA or JAMS arbitrator of Aaron Katz Law LLC's choosing. Any dispute will be determined in accordance with the laws of the Commonwealth of Massachusetts, regardless of conflict of laws considerations. Your further agree that the costs of the arbitration will be borne 50/50 or, if the arbitrator determines that the losing party proceeded in bad faith, by the losing party entirely.

Exhibit 1 (Engagement Letter) (emphasis added).

Mr. Laufer has not expressly or implicitly waived his right to arbitration under the Engagement Letter. Exhibit 3 (Laufer Sworn Declaration).

On August 7, 2023, AKL filed this action via the ECF system instead of properly seeking to compel arbitration under the Federal Arbitration Act ("FAA"). 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition the United States District Court . . ."). AKL's Complaint asserts three Counts: breach of contract; quantum meruit; and, promissory estoppel. All three counts arise out of the allegation that Mr. Laufer improperly failed to compensate AKL for legal services rendered under the terms of the Engagement Letter.

## ARGUMENT

The Court should grant Defendant's motion to compel arbitration pursuant to the FAA. The FAA, 9 U.S.C. § 1 et seq. "establishes a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012) (quotation omitted).

Under Section 4 of the FAA,

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action … of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

To prevail on a motion to compel arbitration, a party "'must demonstrate: (1) that a valid agreement to arbitrate exists, (2) that the movant is entitled to invoke the arbitration clause, (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope.'" Bossé v. N.Y Life Ins. Co., 992 F.3d 20, 27 (1st Cir. 2021) (brackets in original omitted) (quoting Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 6 (1st Cir. 2014)). Here, all four factors are satisfied.

### A Valid Agreement to Arbitrate Exists to Which Both Parties are Bound

The FAA first requires a "written provision . . . to settle by arbitration a controversy[.]" 9 U.S.C. §2.  Thus, the threshold question a court must consider is "whether . . . there exists a written agreement to arbitrate."  <u>Lenfest v. Verizon Enter. Sols., LLC</u>, 52 F.Supp.3d 259, 263 (D. Mass. 2014).

The Engagement Letter in this case contains a clear, explicit, unambiguous, and broad, mandatory arbitration clause.  <u>Exhibit 1</u> (Engagement Letter) ¶7.   This clause requires that "to the maximum extent allowed by law. . . any disputes arising from or related to [the] engagement shall . . . be resolved through binding arbitration."  <u>Id.</u>

AKL does not dispute this.  AKL has acknowledged, through the Complaint, that the Engagement Letter was "a valid and enforceable agreement between AKL and Laufer" that set forth and memorialized in writing the material terms.  <u>Exhibit 2</u> (Complaint) ¶¶73-74.  The arbitration provision is one of these material terms.

AKL also does not dispute that both parties are bound by the arbitration clause.  AKL alleges in the Complaint that "[t]he engagement terms to which Laufer agreed and manifested his assent includes a written mandatory arbitration provision."  <u>Exhibit 2</u> (Complaint) ¶7.

### AKL's claims Are All Within the Scope of the Arbitration Provision

The language of the arbitration provision makes clear that it is intended to serve as the primary recourse for disputes between the parties.  Indeed, the Complaint leaves no doubt that all of AKL's claims "arise from" or are "related to" the parties' engagement.  Count One (Breach of Contract) alleges breach of the Engagement Letter, which contains the arbitration provision.  Complaint ¶¶ 72-82. Count II (Quantum Meruit) and Count III (Promissory Estoppel) allege

unjust and inequitable enrichment based on the same alleged failure by Mr. Laufer to pay for the legal services described in the Engagement Letter.  Id. ¶¶83-89.

Dismissal is appropriate in a case such as this in which all claims are arbitrable.  "The weight of authority clearly supports dismissal of . . .  [a] case when all of the issues raised in the . . . court must be submitted to arbitration."  Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (1st Cir. 1992); see also Spencer Furniture, Inc. v. Media Arts Group, Inc., 349 F.Supp.2d 49, 51 (D. Mass. 2003) ("[c]ourts may go beyond a stay, however, and dismiss the proceeding 'when all of the issues before the court are arbitrable'").

### Mr. Laufer is Entitled to Enforce the Arbitration Clause and Has Not Waived that Contractual Right

Here, AKL admits that Mr. Laufer is empowered under the Engagement Letter to arbitrate this dispute.  Exhibit 2 (Complaint) ¶7.   However, AKL attempts to circumvent the mandatory arbitration provision by claiming that AKL "is electing not to enforce this arbitration provision" and that it "understands that Laufer likewise does not wish to enforce the arbitration provision."  Id.  AKL does not explain how it arrived at this understanding.  AKL also alleges that it sent a July 24, 2023 letter to Mr. Laufer, which concluded:  "If we do not receive a written response from you or Jay [Itzkowitz] by the close of business on July 26th, we will consider the response to be a representation that you do not intend to pay the invoices and that you will not be invoking the engagement letter's mandatory arbitration provision."  Complaint ¶62.

To the extent that AKL is suggesting that Mr. Laufer waived his contractual right to arbitration, this contention falls flat. Mr. Laufer has not voluntarily relinquished this contractual right.  Exhibit 3 (Laufer Sworn Declaration).  Moreover, AKL cannot unilaterally extinguish a former client's contract right, or artificially manufacture an induced "waiver," by imposing an arbitrary two-day deadline for a response to a billing inquiry letter.  "A waiver implied by a

person's conduct . . . must be unequivocal and must allow room for no other explanation of the conduct of the person who allegedly is waiving a contractual right." <u>Bos. Helicopter Charter, Inc. v. Agusta Aviation Corp.</u>, 767 F. Supp. 363, 372 (D. Mass. 1991); <u>see also</u> E.A. Farnsworth, *Contracts* § 8.5 (2d ed. 1990) (waiver is generally applied only to minor or incidental conditions in a contract).

In assessing whether a party has waived its right to arbitrate, courts have examined a list of non-exclusive factors that all focus on conduct *during* the litigation of a lawsuit. These factors include:

> (1) whether the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) whether the "litigation machinery has been substantially invoked and the parties [are] well into preparation of a lawsuit by the time an intention to arbitrate [is] communicated"; (3) "whether there has been a long delay" and trial is near at hand; (4) whether the party seeking to compel arbitration has "invoked the jurisdiction of the court by filing a counterclaim"; and (5) whether discovery not available in arbitration has occurred ...
>
> <u>FPE Foundation v. Cohen</u>, 801 F.3d 25, 29 (1st Cir. 2015) (quoting <u>Restoration Pres. Masonry v. Grove Eur., Ltd.</u>, 325 F.3d 54, 60-61 (1st Cir. 2003)).

This analysis focuses on the existence of undue delay in asserting arbitral rights during litigation. <u>See Crean v. Morgan Stanley Smith Barney, LLC</u>, 652 F. Supp. 3d 171, 183 (D. Mass. 2023); <u>Hall v. Internet Cap. Grp., Inc.</u>, 338 F. Supp. 2d 145, 153 (D. Me 2004) (evaluating length of delay "in the context of litigation activities engaged in during that time").

Mr. Laufer has promptly requested arbitration by asserting his right to arbitrate at the outset of this litigation, through this motion. This is his first opportunity to assert this right and is consistent with the requirements under Section 6 of the FAA. 9 U.S.C. § 6 (application to compel arbitration "shall be made and heard in the manner provided by law for making and

hearing of motions").  There has been no undue delay by Mr. Laufer or any unnecessary

invocation of the litigation machinery prior to this motion to compel.  Compare, e.g., Creative

Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 33 (1st Cir. 2001) (no waiver where

defendant filed motion to stay pending arbitration five months after plaintiff filed complaint);

Odunukwe v. Trans Union, LLC, Civil Action No. 21-cv-10828-ADB, 2021 WL 4554089, at *4

(D. Mass. Oct. 5, 2021) (party "raised the issue of arbitration in its answer" and "took no action

inconsistent with arbitration"); United States v. Williams Building Co., Inc., 137 F. Supp. 3d 6,

11 (D. Mass. 2015) (finding no waiver and noting defendant's answer "asserted arbitration as an

affirmative defense").  Therefore, there has been no waiver.[1]

## CONCLUSION

The FAA mandates the enforcement of arbitration agreements.  Here, both parties are

bound by the Engagement Letter's arbitration provision, and all three of AKL's claims clearly

fall with the arbitration provision's broad scope.  For these and the other reasons identified

above, Mr. Laufer respectfully request that this Court grant his motion to compel, entering an

order directing that arbitration proceed, and dismissing the Complaint.

---

[1] Even if there was a question as to a potential waiver – which there is not - it is well settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself *or an allegation of waiver*, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, (1983) (emphasis added).

Respectfully submitted,

ISSAC LAUFER,

By his attorneys,


    */s/ Damien C. Powell*

Damien C. Powell (BBO #664200)
dpowell@hinckleyallen.com
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109
Tel: (617) 345-9000
Fax: (617) 345-9020

Dated: November 10, 2023

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the attorney of record for any party indicated as non-registered participants on this 10th day of November, 2023.


    */s/ Damien C. Powell*

Damien C. Powell

64262097 v1