# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

AARON KATZ LAW LLC,

     Plaintiff,

v.

ISSAC LAUFER,

     Defendant.

**Case No. 23-CV-11801-PBS**

### SWORN DECLARATION OF AARON M. KATZ

I, Aaron M. Katz, do hereby declare under the pains and penalties of perjury under the laws of the United States that the following facts are true and correct to the best of my knowledge and recollection:

1. I am the founding partner of Aaron Katz Law LLC ("AKL"). I was defendant Issac Laufer's counsel of record in *United States ex rel. Integra Med Analytics, LLC v. Laufer et al.*, No. 7:17-cv-09424 (S.D.N.Y.). I was originally retained by Laufer in early 2021, when I was still an equity partner at Ropes & Gray LLP. I withdrew as Laufer's counsel in the False Claims Act matter after Laufer elected to proceed exclusively with Kasowitz Benson & Torres as his counsel. Laufer informed me of that decision on June 22, 2023, and I moved to withdraw my appearance that same day.

2. Exhibits B through J appended to AKL's opposition to Laufer's motion to set aside the default entry are true and correct copies of the documents that AKL's opposition memorandum describes.

3. AKL filed this lawsuit only after unsuccessfully seeking assurances from Laufer that he intended to pay AKL's outstanding invoices. The basic chronology is as follows:

a. It was early June 2023 when AKL first became concerned that Laufer was planning not to pay AKL's outstanding invoices.

b. On June 12, 2023, I emailed Laufer's business subordinate Fran Ross, asking for "clarity" about whether AKL's past-due invoices would be paid before the Internal Revenue Service's June 15th estimated tax deadline.  Ross replied that she would "follow up" with Laufer's business subordinate Jay Itzkowitz.

c. On June 14, 2023, Ross emailed me, "Hi, Aaron, Sorry, they are still being reviewed."

d. On June 22, 2023, after I withdrew my appearance as Laufer's counsel, I re-sent AKL's four outstanding invoices to Itzkowitz.  He forwarded those invoices to Ross, copying me, in an email the following day.

e. On July 17, 2023, after hearing nothing from Laufer, Itzkowitz, Ross, or any of Laufer's other representatives regarding the invoices, I emailed Itzkowitz and Ross to request "an update regarding [the] invoices."  The next day, Itzkowitz replied, "I will find out if the attorney has finished reviewing them."  Itzkowitz never identified that "attorney" nor why an attorney would be reviewing AKL's invoices months after they were issued.

f. On July 24, 2023, after hearing nothing further from Itzkowitz, Ross, Laufer, or any other Laufer representative, I emailed Laufer and Itzkowitz a letter that requested Laufer to "advise [AKL] in writing by" July 27, 2023 "(1) whether you agree to pay the [three] past-due invoices in full by July 31st and the final invoice in full by August 18th; (2) if you are disputing the invoices, the basis for the dispute and the amount you are disputing; and (3) if you are disputing

your obligation to pay the invoices, whether you are demanding that the dispute be resolved pursuant to the mandatory arbitration provision contained in our October 7, 2022 engagement letter."  The letter further stated that "[i]f we do not receive a written response from you or Jay by the close of business on July 27th, we will consider such lack of response to be a representation that you do not intend to pay the invoices and that you will not be invoking the engagement letter's mandatory arbitration provision."  Neither Laufer, Itzkowitz, nor any other Laufer representative provided any response, written or oral, to the information that AKL's letter requested.

g.   On August 7, 2023, I filed the complaint via the CM/ECF system.

h.   On or about August 17, 2023, I sent Laufer via USPS mail addressed to 34 Astor Place, Monsey, New York a request for waiver of service.  I am aware that the mail was delivered, because it had a tracking number.  I never received any response of any kind to the waiver request.

4.  On September 23, 2023, I arranged for Shawn Palmer, an adult male residing in Reading, MA, to serve the summons and complaint on Laufer via Federal Express direct signature required, addressed to two residences that I have personal knowledge Laufer (directly or indirectly) owns and utilizes on a regular basis.  The residences are his three-bedroom apartment in the "White House" at 262 Central Park West in Manhattan and a custom-built estate at 34 Astor Place in Monsey, New York.  The Federal Express envelopes, which contained a copy of the summons and the complaint, were successfully delivered to those locations on September 27, 2023.

3

5.  Laufer previously discussed with me his Manhattan apartment at 262 Central Park West.  He described the apartment to me and invited me, my wife, and my children to stay at the apartment during a weekend trip to Manhattan that we were planning to take in late February 2022.  In a text message he sent to me on February 15, 2022, Laufer described the apartment as having "older bathrooms. Not like the Rockland house."  I understood that Laufer's reference to the "Rockland house" was a reference to his Monsey estate, which has modern, custom-designed bathrooms throughout.  Laufer stated, "Typically I am in city mid week," which I understood to mean that he typically utilized the apartment mid-week.  Neither I nor my family ended up staying at Laufer's Manhattan apartment.

6.  I have stayed with Laufer at his Monsey estate as an overnight guest.  The Monsey estate is filled with high-end custom furnishings, including unique fixtures and wall coverings imported from Europe.  The lower level has an impressive home gym that Laufer told me he regularly utilizes.  When I stayed there in April 2021, the kitchen was stocked with fresh food.  Laufer described to me how he liked to use the kitchen to cook meals for Shabbat dinners.  It was clear to me that Laufer regularly utilized the Monsey estate as his home.  During my stay, visitors to the home included a local Rabbi, Laufer's personal assistant Kevin LNU (who I understood worked inside the home and ran errands for Laufer in and around Monsey), and a car salesman from whom Laufer had recently purchased a car.  I was aware that, after Laufer's purchase, the dealership delivered the car to the Monsey estate.  During an April 2021 conversation that occurred in the backyard of the Monsey estate, Laufer described to me how he was planning to purchase neighboring parcels so that he could build

additional structures that could be used by family members who lived in the area.  I understood that Laufer's adult children lived nearby, which Laufer stated was important to him.

7.  In conversations with and messages to me, Laufer used the term "my house" to describe the Monsey estate.  For example, in a March 1, 2023 voice message that Laufer sent me via WhatsApp, he stated that his personal assistant Kevin LNU could assist our document collection vendor with certain collection efforts.  Laufer stated that Kevin "could do [the requisite tasks] from my house" because "he's on my computer all the time anyways."  I was aware from personal experience that the "house" to which Laufer was referring was the Monsey estate.

8.  On April 21, 2023, Laufer sent me via WhatsApp a photograph of at least 12 plates of food that he cooked for a Shabbat dinner.  The plates were laid out on a marble kitchen island that is identical to the kitchen island that I recall being in the kitchen of the Monsey estate.  Along with the picture, Laufer sent me a voice message stating, "Hi, Aaron.  I have all my [adult] kids for Shabbat and I'm busy cooking, I'm creating these new dishes."  Laufer's use of the Monsey estate for a family Shabbat dinner on a Friday evening was consistent with the conversations that I had with Laufer regarding the Monsey estate when I stayed there in April 2021.

9.  Third parties affiliated with Laufer also have referred to the Monsey estate as Laufer's "home."  For example, when we were scheduling meetings to prepare Laufer for sworn Civil Investigate Demand testimony in April 2021, I was told by the special assistance to Laufer's longtime compliance counsel Aaron Lichtman that Laufer wanted the preparation sessions to be at "his home located at 34 Astor Place, Wesley Hills, NY."

I am aware that Wesley Hills is another way of referring to the area of Monsey where Laufer's Monsey estate is located.

10. During the nearly 2.5 years that I served as Laufer's counsel, I was never asked to send any mail to Laufer's house in Newburgh, New York.  I used the address of the Newburgh house as the address on Ropes & Gray's engagement letter dated March 9, 2021 because Laufer's longtime compliance counsel Aaron Lichtman requested that I do so.  I used the address of the Newburgh house on the AKL engagement letter dated October 7, 2022 in the interest of continuity.

11. Laufer described the Newburgh house to me in prior conversations.  Laufer described the Newburgh house as being in a quiet, rural-like location on the banks of the Hudson River.  Laufer described the Newburgh house as essentially a getaway house that he would use on occasional weekends or for vacation if he did not want to travel far. Laufer never described the house as his "principal residence," and the location of the Newburgh house would make it an extremely inconvenient home base for Laufer given the location of his businesses.  Laufer's principal place of business is in Baldwin, New York (Nassau County), and the skilled nursing facilities that he owns are located mainly in Nassau County and Westchester County.

12. Before deciding to serve the complaint via signature-required mail to Laufer's Manhattan apartment and Monsey estate rather than to the Newburgh house, I became aware of a 2020 lawsuit filed against Laufer in New York state court where Laufer asserted in an affidavit that service of the complaint to the Newburgh house did not provide him any notice of the lawsuit.  I also became aware of a 2021 lawsuit againt Laufer in New York state court in which service of the complaint was made to a "John

Doe" at the Monsey estate; Laufer did not, in that case, challenge service as being ineffective. This informed my decision that the summons and complaint should be delivered to the Manhattan apartment and the Monsey estate

13. The Federal Express delivery to Laufer's Manhattan apartment, which is located in an exclusive doorman building known as the "White House," was signed for by an individual identified on the Federal Express receipt as "R., Rich." I personally confirmed with the service desk at the White House that "R., Rich" is an individual who works at the building's service desk on weekdays.

14. The first time that Laufer or anyone associated with Laufer contacted me regarding AKL's lawsuit was November 10, 2023, when Damien Powell emailed me requesting a meet-and-confer on Laufer's motion to set aside the default entry.

15. Neither Laufer nor anyone associated with Laufer ever raised any objections to a single time entry on any of the Ropes & Gray or AKL invoices that I issued to Laufer. The only "question" that I ever received regarding any of the invoices was why AKL was billing Laufer in quarter-hour increments. I received that question from Jay Itzkowitz on August 1, 2023, more than a month after I issued AKL's final invoice to Laufer (a June 2023 invoice that I unilaterally chose to knock down to $4,425 by writing off all time incurred after June 5, 2023). I told Itzkowitz that quarter-hour was the billing increment specified in the AKL engagement letter. Quarter-hour was also the billing increment that was utilized for Laufer's matter while I was at Ropes & Gray, which was clearly set forth in the Ropes & Gray engagement letter.

I swear under penalties of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and recollection.

Respectfully submitted,


*/s/ Aaron M. Katz*
Aaron M. Katz
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305
akatz@aaronkatzlaw.com

*Counsel to Aaron Katz Law LLC*

DATED: November 11, 2023

**CERTIFICATE OF SERVICE**

I, Aaron M. Katz, hereby certify that a copy of the foregoing pleading was served on defendant Issac Laufer via USPS certified mail, sent to his residence at 34 Astor Place, Monsey, NY.

*/s/ Aaron M. Katz*